IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY CONKLIN, | : |
| Plaintiff, | : Civil Action. No.: 2:24-cv-00857 |
| v. | : |
| ABEC, INC. | : |
| Defendant. | : |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Plaintiff, Tammy Conklin (Conklin) is a former employee of Defendant ABEC, Inc. (ABEC). Conklin claims that ABEC unlawfully interfered with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq*. Conklin further claims unlawful retaliation under FMLA.

ABEC moves for summary judgment – asserting that there is no competent evidence indicating it interfered with Conklin's FMLA rights or retaliated against her for requesting leave. ABEC further argues that its Chief Operating Officer and decision maker in this case, Martin Pleyer (Pleyer), was entirely unaware of Conklin's FMLA activity or the underlying medical condition that precipitated her request. For the reasons that follow, ABEC's motion for summary judgment is granted.

## II.    FACTUAL BACKGROUND

Conklin began her employment with ABEC in January of 2021 as an Import/Export Specialist at their corporate headquarters located in Bethlehem, Pa. By June of that same year, Conklin had been promoted to Global Logistics Manager. Conklin's direct report for the duration of her employment was ABEC's Global Director of Supply Chain, Laura Hassler (Hassler).

In early August 2022, Conklin requested intermittent FMLA leave in connection with her Celiac Disease.[1] Renee Gallo (Gallo), ABEC's Human Resources Coordinator, emailed Conklin the required FMLA certification paperwork and instructed her to have it completed by her physician and returned within 15 calendar days. Rachel Edwards (Edwards), ABEC's then-HR Generalist, also forwarded Conklin information related to her FMLA eligibility. Conklin timely returned the completed FMLA certification to both Gallo and Edwards. However, Conklin never submitted a request to actually use any FMLA leave during her employment. Conklin never spoke with Pleyer regarding her request for FMLA leave or disclosed to him that she suffered from Celiac Disease.

In early September 2022, just weeks after Plaintiff's FMLA documentation was received and processed, Conklin was called into a meeting with Hassler and Edwards where she was informed by Edwards that she was terminated effective immediately. The purported reason for Conklin's termination was her failure to meet expectations

---

[1] Both parties incorrectly refer to Ms. Conklin's condition as "Celiac's" Disease. This mistake is more understandable from Defendant's counsel who likely followed Plaintiff's lead.

2

with respect to her duties, which included: "(1) ensuring barcode scanning was implemented in the warehouse and semi-sterile kitting room; (2) Customs Trade Partnership Against Terrorism application and approval; (3) identifying and implementing a Syteline shipping system; (4) ensuring that regular cycle counting was implemented and at a level in excess of 95% (i.e. inventory accuracy)." Dkt. 32-6 at ¶¶ 5-8. During the meeting it was made clear that Pleyer instructed Hassler and/or Edwards to terminate her due to performance deficiencies.

In February 2024, Conklin filed her initial Complaint containing the above FMLA claims as well as a state law wrongful termination claim. Subsequently, Conklin filed an Amended Complaint containing only the FMLA claims, to which ABEC filed an Answer. Notably, discovery closed without Plaintiff's counsel deposing Hassler or Pleyer. Defendant's motion is now ripe for consideration.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [] judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation marks omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving under Rule 56 "bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820-821 (3d Cir. 2006) (citations and internal quotation marks omitted).

The movant's initial burden does not relieve complainant's obligation of producing evidence that would support a jury verdict. *Anderson*, 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing party must advance specific facts showing that there is a genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250.

## IV. DISCUSSION

The FMLA generally prohibits employers from interfering with or restraining employees from exercising rights provided under the Act. *See* 29 U.S.C. § 2915(a)(1). Employers are further prohibited from discharging any employee for opposing such unlawful interference. *See* 29 U.S.C. § 2615(a)(2). "The former provision is generally … referred to as interference whereas the latter is often referred to as retaliation."

4

*Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 301 (3d Cir. 2012) (citation and internal quotation marks omitted).

To succeed on an FMLA **interference** claim, a plaintiff-employee must demonstrate that (1) she was entitled to take FMLA leave, and (2) defendant-employer denied her this entitlement. *See Lichtenstein*, 691 F.3d at 312. "To prevail on a **retaliation** claim under the FMLA, the [plaintiff-employee] must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of her [FMLA] rights." *Id.* at 301-302 (emphasis added). The FMLA does not provide employees with a right against termination for legitimate reasons unrelated to their exercise of their rights under the act. *Sarnowski v. Air Brooke Limousine, Inc.*, 519 F.3d 398, 403 (3d Cir. 2007). Finally, it is within the sound discretion of district courts to dismiss interference claims that are wholly duplicative of concurrently plead retaliation claims. *Lichtenstein*, 691 F.3d at 312 n.25 (*citing Lovland v. Employers Mutual Casualty Co.*, 674 F.3d 806, 811-812 (8th Cir. 2012)

Retaliation claims are analyzed under the oft-cited burden shifting framework distilled in *McDonnel Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Lichtenstein*, 691 F.3d at 302. Under *McDonnel Douglas*, plaintiff-employee has the initial burden of establishing a *prima facie* case. Accordingly, plaintiff must point to record evidence sufficient to create a genuine factual dispute relating to invocation of an FMLA right, termination, and causation. *See Id.* at 302. Once plaintiff makes a *prima facie* showing, the burden shifts to the employer to articulate some legitimate,

5

nondiscriminatory reason for the adverse employment action. If and when the employer meets this burden, plaintiff must show that the legitimate reasons offered by employer are a pretext for the alleged FMLA violation. *See Zimmerman v. Health Network Laboratories, L.P.*, 5:24-cv-01142, 2025 WL 457100, at *3 (E.D. Pa. Feb. 10, 2025).

### a. Conklin's Interference Claim

Here, Conklin's interference claim is dead in the water. It is undisputed that Conklin did not request to actually use any intermittent FMLA leave. *Compare* Def's Undisputed Facts (Dkt. 32-2), at ¶17 *with* Pl.'s Opp'n to Def.'s Undisputed Facts (Dkt. 34-1), at ¶17. Additionally, the FMLA documentation Conklin provides from her doctor authorizes **prospective** use of her FMLA leave beginning August 12, 2022. *See* Def.'s Mem. Supp. Summ. J. at Ex. F-G (Dkt. 32-9, 10). Any suggestion that FMLA was to be used or applied retroactively is not borne out by the record evidence. It follows that since Conklin never attempted to use her FMLA leave, ABEC did not actually deny her this entitlement. *See Lichtenstein*, 691 F.3d at 312.

Because Conklin never attempted to use time associated with her FMLA qualifying condition — hence ABEC could not interfere with or deny her that right — her Complaint can be distilled down to an allegation that she was fired because she simply qualified for FMLA. In this way, her interference claim is wholly duplicative of her retaliation claim. This supports dismissal of her interference claim as it "is so clearly redundant to the retaliation claim." *Lichtenstein*, 691 F.3d at 312 n.25. Conklin's response to ABEC's motion for summary judgment fails to even address

6

ABEC's arguments regarding her FMLA interference claim. Accordingly, Conklin's FMLA interference claim is dismissed.

### b. Conklin's Retaliation Claim

Conklin's retaliation claim similarly fails. As an initial matter, Conklin must show that the decision maker responsible for her termination was aware of her FMLA status at the time they made the decision to separate her from employment. *Daniels v. School Dist. Of Phila.*, 776 F.3d 181, 196-197 (3d Cir. 2015). Conklin has put forth no evidence that Pleyer, the decision maker in this case, knew of her condition or her qualification for FMLA. Additionally, Conklin never deposed Pleyer on this point. Therefore, the only record evidence relative to Pleyer's knowledge is his sworn affidavit attesting that he fired her due to her inability to meet her work expectations. *See* Dkt. 32-11. Conklin's attempt to rest on her pleadings in light of Defendant's legitimate proffered reason, wholly unrelated to her invocation of FMLA, does not survive the analysis under *McDonnell Douglas*. Stated differently, based on the record, it would be impossible for Conklin to establish that Pleyer fired her **because** of her FMLA status.

Conklin makes some interesting allegations related to the temporal proximity between her termination and qualification under FMLA. Conklin also claims that Pleyer had "constructive knowledge" of her FMLA status by way of Conklin's communications with Hassler and Edwards. First, temporal proximity of adverse action to protect conduct does not, by itself, establish that the decision maker knew of the protected conduct. *See Daniels*, 776 F.3d at 197. A Plaintiff asserting an FMLA

7

retaliation claim must also show that the decision maker had knowledge of the protected activity. *Moore v. City of Phila.*, 461 F.3d 331, 351 (3d Cir. 2006).

With respect to Conklin's assertion that Pleyer constructively knew of her FMLA status, this argument is generally disfavored by district courts around the country. While there may be good policy reasons to impute the knowledge of a direct supervisor or human resources officer to a decision maker[2] (in this case the COO of ABEC), courts have uniformly rejected the concept of constructive knowledge in the context of discrimination. *Cf. Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."); *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) (constructive knowledge does not show actual intent in the context of discrimination); *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 721 (E.D. Pa. 2021) (Beetlestone, J.) (suggestion that jury could infer decision maker's knowledge of claimants protected activity based on claimants conversations with another party was unreasonable absent evidence that the third party communicated information to decision maker). The Third Circuit is similarly partial to the actual

---

[2] An employee may reasonably believe that once they communicate administrative requests to HR, those requests are, for all intents and purposes, relayed to those in charge of personnel decisions. This position is more salient in situations where an employee has little day-to-day contact with decision makers. Separately, this Court is curious about the relationship between the weight afforded the temporal proximity as an inference of discrimination and Plaintiff's theory of constructive knowledge. It would seem that a greater the amount of time between HR's awareness of Plaintiff's FMLA status and the adverse employment decision rendered by a decision maker would increase the weight given any sort of constructive knowledge theory. Conversely, a shorter, more suggestive time frame would decrease the likelihood that a decision maker had time to confer with HR to become informed of a Plaintiff's FMLA status. Neither party raises this issue, and the Court does not purport to address it here, as the concept of constructive knowledge is generally disfavored in the context of discrimination.

knowledge standard. *See Moore*, 461 F.3d 331, 351; *Walsh v Wal Mart Stores, Inc.*, 200 Fed.Appx 134, 137 (3d Cir. 2006).

Finally, none of Plaintiff's theories address the non-discriminatory reasons ABEC asserts were the basis for her dismissal. Hassler, Plaintiff's direct report, indicated in her affidavit that Conklin "repeatedly made incorrect transactions, demonstrated a lack of accountability, and required constant follow-up from management." Dkt. 32-6 at ¶12. Assuming for argument's sake that Pleyer did know of Conklin's FMLA status, she would still need to demonstrate that her failure to perform was not the real reason for her termination. She has pled as much, but in light of her failure to depose Hassler or Pleyer, that is all she has done. Unfortunately for Plaintiff, Rule 56 requires more.

## V. CONCLUSION

For the foregoing reasons, ABEC's motion for summary judgment is granted and Conklin's complaint is dismissed. An appropriate order to follow.

BY THE COURT:

_____
GAIL A. WEILHEIMER, J.

9